IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **DRUMMOND AMERICAN, LLC** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Case No.: 4:08-cv-393 |
| § | |
| **SHARE CORPORATION, JACK** § | |
| **BRIERTON, and LEO SHARP,** § | |
| § | |
| **Defendants.** § | |

**MEMORANDUM OPINION & ORDER**
**GRANTING PLAINTIFF'S MOTION FOR PARTIAL FOR SUMMARY JUDGMENT**

Before the court are "Plaintiff's Motion for Partial Summary Judgment and Brief in Support" (Dkt. 28), "Defendants' Response to Plaintiff's Motion for Partial Summary Judgment" (Dkt. 29), and "Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Partial Summary Judgment" (Dkt. 30). Having considered the Plaintiff's motion, Defendants' response, Plaintiff's reply, and the relevant legal principles, Plaintiff's motion is **GRANTED**.

## I. BACKGROUND

This is a breach of contract, misappropriation of trade secret, and tortious interference with business lawsuit. Plaintiff Drummond American LLC ("Drummond") is an Illinois company that sells specialty chemical products. Defendants Jack Brierton ("Brierton") and Leo Sharp ("Sharp") were employed by Drummond as sales agents. Defendant Share Corporation ("Share") is a Wisconsin company that directly competes with Drummond in the sale of speciality chemical products.

The facts that give rise to the present lawsuit are relatively simple. Drummond alleges

1

that Brierton and Sharp violated the terms of the covenant not to compete in their Independent Sales Agent Agreement ("the Agreement") by terminating their employment with Drummond and performing work for a direct competitor, Share. The covenant not to compete provides as follows:

> (d) Accordingly, in consideration of COMPANY'S engaging him or continuing to engage him as an INDEPENDENT SALES AGENT under this Agreement, AGENT hereby agrees as follows:
>
>> (i) During the term of his independent sales agency hereunder and for a period of two (2) years following termination thereof, whether by himself or by COMPANY, for whatever reason and whether for cause or without cause, AGENT shall not, directly or indirectly, for or on behalf of himself or any person, firm or entity solicit orders from or sell to any customer whom or which he solicited or sold on behalf of COMPANY during the last twelve (12) months of his relationship with COMPANY, any products competitive to those distributed by COMPANY. Products competitive to those distributed by COMPANY are those which are substantially similar to or serve substantially similar functions as those products listed in COMPANY'S Sales Kit, Catalogs, and Manual furnished to AGENT from time to time.

(Pl.'s Mot. Summ. J. Ex. A, B ¶ 3(d)(i).) Although Defendants admit that Brierton and Sharp began working for Share after they terminated their employment, they deny Plaintiff's claim that they violated any term of their employment contract by doing so.

In the instant motion, Plaintiff seeks summary judgment on two issues: (1) whether the non-compete clause is enforceable; and (2) if so, whether Brierton and Sharp breached this clause when they began working for Share. Plaintiff argues that under Texas law, the non-compete portion of Defendants Brierton and Sharp's contracts is enforceable. In response Defendants raise the defenses of contract modification and bad faith constructive discharge. According to Defendants, their contracts were orally modified to give them exclusive sales

privileges in specified territories after their employment with Drummond began.  Although these alleged privileges were protected for several years, Defendants argue Plaintiff ultimately breached their contracts through its implementation of the "Better Together Program."  In the alternative, Defendants argue they cannot be held liable for breach because Plaintiff's actions gave rise to bad faith constructive discharge.  Plaintiff contends Defendants waived the defense of contract modification by not properly pleading it as an affirmative defense and that there is insufficient evidence to support Defendants' theory of constructive discharge.

## II.  STANDARD OF REVIEW

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The purpose of this rule is "to isolate and dispose of factually unsupported claims or defenses."  *Celotex*, 477 U.S. at 323–24.  Therefore, in deciding whether to grant a motion for summary judgment a court must consider whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In deciding summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party.  *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000).

Both parties bear burdens of producing evidence in the summary judgment process.  *Celotex*, 477 U.S. at 323.  First, the party seeking summary judgment must show that the admissible evidentiary material of record is insufficient to permit the nonmoving party to carry

3

its burden of proof. *Id.* The nonmoving party must then set forth "specific facts showing a genuine issue for trial" and "may not rely merely on the allegations or denials in its own pleadings." FED. R. CIV. P. 56(e); *Anderson*, 477 U.S. at 249. However, "[n]either conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996) (quotations omitted).

## III. DISCUSSION & ANALYSIS[1]

### A. ENFORCEABILITY OF RESTRICTIVE COVENANT

In Texas, the enforceability of a covenant not to compete is a question of law for the court. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004). The Texas Covenants Not to Compete Act sets forth two criteria for the enforceability of a covenant not to compete: it must be (1) "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made;" and (2) contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN § 15.50(a) (Vernon 2010).

Determining whether a covenant not to compete is ancillary to an otherwise enforceable

---

[1]The court notes at the outset that the choice of law provision in the Agreement states: "This Agreement shall be construed, interpreted and performed in accordance with the laws of the State of Illinois." The parties have made no mention of this clause nor have they argued for the application of Illinois law. The court assumes, by their silence on this issue and citation to Texas law in their briefs, the parties have implicitly relied on the Texas Supreme Court's decision in *DeSantis v. Wackenhut Corporation*. 793 S.W.2d 670 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991). In *DeSantis*, the court held that Texas law applies to the enforcement of noncompetition agreements in a case, such as the case at bar, where Texas has a materially greater interest than the chosen state in determining whether the noncompetition agreement is enforceable. *Id.* at 679–81. Accordingly, this court has applied Texas law to its analysis of the enforceability of the non-compete clause and Defendants' affirmative defenses.

4

agreement consists of two steps. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex. 2009). First, the court must identify an otherwise enforceable agreement. *Id.* In other words, the court must "set aside the Agreement's noncompete covenants and determine whether any other promises remain to bind the parties under the Agreement." *31-W Insulation Co. v. Dickey*, 144 S.W.3d 153, 157 (Tex. App.—Fort Worth 2004, pet. withdrawn). Second, the court must determine whether the noncompete covenant is ancillary to this otherwise enforceable agreement. *Fielding*, 289 S.W.3d at 849. In order to satisfy this ancillary step, a covenant not to compete must meet the following conditions: (1) "the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing;" and (2) "the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Id.*

**1. Otherwise Enforceable Agreement**

This court's initial inquiry, therefore, is whether the Agreement contains any binding promises other than the covenant not to compete. Disregarding the non-compete promises in paragraph 3(d)(i) of the Agreement, Drummond has an otherwise enforceable agreement with Brierton and Share. In the Agreement, Drummond promised to provide Brierton and Sharp sales kits, manuals, samples, catalogs, customer information, and training it considered to be confidential information and trade secretes. In return, Brierton and Sharp agreed to maintain the confidentiality of this information.[2] Although Drummond's promise to provide Brierton and

---

[2]Paragraph 3(b) of the Agreement provides:

COMPANY considers and AGENT hereby agrees that the Sales Kit, Manuals, Prospect Lists, Customer Lists, Customer Information records and cards, instruction and tutelage are Confidential Information and Trade Secrets of

5

Sharp with confidential information was illusory when made, the parties did form an "otherwise enforceable agreement" when Drummond actually provided Brierton and Sharp with confidential information. *Id.* at 852; *see also Alex Sheshuhoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) ("[A] unilateral contract formed when the employer performs a promise that was illusory when made can satisfy the requirements of the Act."). Therefore, the Agreement contains an otherwise enforceable agreement separate from the restrictive covenant.

**2. Ancillary To**

For Drummond's covenant not to compete to be enforceable, it also must satisfy both elements of the "ancillary to" inquiry: (1) the consideration must give rise to the employer's interest in restraining competition; and (2) the covenant must be designed to enforce the employee's consideration in the otherwise enforceable agreement. *Fielding*, 289 S.W.3d at 849. Here both elements of the "ancillary to" requirement are satisfied. Drummond's consideration, the promise and provision of confidential information, gave rise to its interest in restraining Brierton and Sharp from competing. *See id.* at 852. In addition, the covenant is designed to prevent Brierton and Sharp from using the confidential information in competition against Drummond after their departure. *Id.*

**3. Reasonable Limitations**

Having determined the restrictive covenant was ancillary to an otherwise enforceable agreement, the only remaining consideration is whether the "limitations as to time, geographical area, and scope of activity to be restrained [ ] are reasonable and do not impose a greater restraint

---

COMPANY ("Confidential Information and Trade Secrets"), and AGENT agrees to maintain their confidentiality.

than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE ANN § 15.50(a). The restrictions in the present case restrain Brierton and Sharp from calling on any Drummond customer from whom they solicited orders or to whom they sold competitive products on behalf of Drummond during the last year of their employment for a period of two years following termination of their employment. The court can find nothing unreasonable about the time, geographical area, or scope of the activity to be restrained. To the contrary, the restriction appears reasonably necessary to protect Drummond's business interest in maintaining confidential sales information and customer lists. Additionally, Texas courts have enforced covenants not to compete with similar or greater restrictions. *Sheshunoff*, 209 S.W.3d at 657 (holding covenant prohibiting employee from soliciting or providing services to employer's clients for period of one year following termination reasonable); *Amey v. Barrera*, No. 13-01-00130-CV, 2004 WL 63588, *6 (Tex. App.—Corpus Christi Jan. 15, 2004, no pet.) (holding covenant not to compete that restricted flower shop-seller from doing floral business in city where shop was located or surrounding area for 5 years was reasonable) (unpublished).

### B. AFFIRMATIVE DEFENSES

Defendants did not respond to the substance of Plaintiff's arguments concerning the enforceability of paragraph 3(d)(i) of the Agreement or contest Plaintiff's assertion that "to the extent the Agreements are found to be enforceable, Defendants do not dispute that they have breached the Agreements." (Pl.'s Mot. Summ. J. at 10.) Instead, Defendants argue Plaintiff committed a prior breach of the Agreement by violating the terms of an alleged oral modification. Additionally, Defendants argue they cannot be held liable for breach because they were constructively discharged. Therefore, before considering whether the evidence indicates as

7

a matter of law Defendants breached paragraph 3(d)(i) of the Agreements, the court will consider Defendants' contract modification and constructive discharge defenses.

**1. Contract Modification**

Plaintiff contends that Defendants' contract modification defense is an affirmative defense which has not been properly plead. This argument presents two threshold questions: (1) whether contract modification is an affirmative defenses under Texas law; and (2) if so, whether Defendants' answer was sufficient to provide Plaintiff fair notice of their defense of contract modification.

In Texas, contract modification is unquestionably regarded as an affirmative defense. FED. R. CIV. P. 8(c) ("In responding to a pleading, a party must affirmatively state any . . . affirmative defense"); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (allegation that contractual alimony agreement was modified "is clearly an affirmative defense"). Therefore, under Federal Rule of Civil Procedure Rule 8(c), "[a] defendant must plead [contract modification] with enough specificity or factual particularity to give the plaintiff *fair notice* of the defense that is being advanced." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (quotations omitted) (emphasis added). The policy behind this rule is "that a defendant should not be permitted to lie behind a log and ambush a plaintiff with an unexpected defense." *Id.* (quotation omitted). However, when an affirmative defense is raised in a manner that does not cause unfair surprise, a technical failure to comply with Rule 8(c) is not fatal. *Id.* at 885–86. "More specifically, a defendant does not waive an affirmative defense if it is raised at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Id.* at 886 (quotations omitted).

In the present case, Defendants have not technically plead "contract modification," nor have they made allegations sufficient to place Plaintiff on notice that they intended to allege that the underlying employment contract was modified. In their affirmative defenses contained in their answer, Defendants claim that "Plaintiff materially breached the restrictive covenant prior to Defendants' terminating their employment with Drummond, which was a large portion of the basis for Defendants' terminating their employment with Drummond." (Def.'s Orig. Answer at 9.) Defendants also allege that they "acted reasonably and in good faith at all times herein and based on all relevant facts and circumstances known by them at the time they so acted" and that "Plaintiff's damages, if any, were caused or contributed to by Plaintiff's own actions or the actions of others over whom Defendants exercised no control and for whose conduct is not liable." (*Id.* at 10.) These allegations, however, are not sufficient to provide notice of Defendants' claim that there was an oral modification of the employment contract whereby the Plaintiff specifically promised that Brierton and Sharp would have exclusive sales territories for Drummond products.

**2. Constructive Discharge**

Defendants next argue that they cannot be held liable for breach because Drummond's actions amount to "bad faith constructive discharge." A constructive discharge occurs when job conditions are made so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004); *Ayrain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008). Constructive discharge claims typically arise in the context of employment discrimination lawsuits, where an employee must prove he was terminated because he was a member of a protected class or engaged in

protected activity.  *See, e.g.*, *Ayrain*, 534 F.3d at 480 (constructive discharge is legal substitute for discharge element in discrimination cases under Title VII of Civil Rights Act of 1964); *Univ. of Tex. Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 773 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (pleading of constructive discharge meets termination requirement of Texas Whistleblower Act); *Passons v. Univ. of Tex.*, 969 S.W.2d 560, 562 (Tex. App.—Austin 1998, no pet.) (constructive discharge satisfies discharge element of Texas Commission on Human Rights Act).  However, Texas courts have also considered constructive discharge in cases involving breach of employment contracts.  *See Baylor Univ. v. Coley*, 221 S.W.3d 599, 604–605 (Tex. 2007) (former employee alleged "that she was constructively discharged-that is, that she was in effect terminated without due process by being forced to resign" before her tenure was complete).

To support their claim of constructive discharge Defendants cite three conditions which they argue made their work environment untenable.  First, Defendants allege Drummond violated its promise to allow them unfettered access to accounts in their territories.  Second, Defendants cite the fact that Drummond had been fined $30,000,000 by the Justice Department for corrupt sales practices.  Finally, Defendants point to the fact that Drummond asked them to sign a new sales agreement.

Defendants' claim that they were constructively discharged is without merit.  Defendants' at will employment agreement was terminable at any time by either party with or without cause.  Termination of at will employment does not invalidate a restrictive covenant and it does not give rise to a claim for constructive discharge.  Even if constructive discharge did invalidate a restrictive covenant, Defendants' evidence does not support "bad faith constructive

10

discharge." Defendants' first argument hinges upon the alleged oral contract modification. As this court has already discussed, there is no evidence to support modification and even if there were, the Agreement's merger clause prohibits the type of oral modification alleged by Defendants. Defendants' evidence concerning Drummond's Justice Department fine is irrelevant to the breach of contract issues before the court and in no way indicates that Defendants' work conditions were so altered that a reasonable person would have felt compelled to resign. Similarly, being asked to sign a new sales agreement does not create job conditions that are so difficult or unpleasant that a reasonable person would have felt compelled to resign. The fact that Defendants' were unhappy with the terms of the new sales agreement does not as a matter of law create conditions so serious to reasonably suggest constructive discharge.

In a final attempt to salvage their constructive discharge defense, Defendants argue Drummond acted in bad faith and cite a Seventh Circuit case which held that a restrictive covenant is not enforceable where the employer acted in bad faith. *See Rao v. Rao*, 718 F.2d 219, 222–23 (7th Cir. 1983). Defendants' only evidence of bad faith is the affidavit of former Drummond employee Jason Howard, in which he remembered a statement from a Drummond manager that "[s]ome of the Drummond agents will not like [the new agreement] and that's fine, we'll just move on." (Defs.' Resp. at 8.) Defendants argue this statement is evidence that Drummond acted in bad faith because it shows Drummond intended to "run off" Drummond agents. (*Id.*) Even if this evidence were admissible and sufficient to show bad faith, *Rao* is inapplicable to the case at bar. *Rao* was a diversity case that involved the application of Illinois law and the employment agreement at issue was not terminable at will. *See Rao*, 718 F.2d at 220–21. Under Texas law, Brierton and Sharp's at will employment contracts, were terminable

11

at any time without cause. *See Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991).

### C. BREACH

The only remaining issue is whether Defendants' breached the restrictive covenant when they began working for Share. As Plaintiff notes in its motion for partial summary judgment, Brierton and Sharp's undisputed deposition testimony indicates that they continued to sell to Drummond customers after they began working for Share, but within two years of leaving Drummond. In Brierton's deposition he admits he continued to sell to all of his former customers:

> Q: Okay. Every customer to whom you sold Share products was somebody to whom you had previously sold Drummond products?
>
> A: That's true.

(Brierton Dep. at 106.) Sharp's testimony reveals that he too sold Share products to his former Drummond customers:

> Q: Okay. So is it true to say that the - - while you were with Share, the majority of customers to whom you sold Share products were customers you had while you were at Drummond?
>
> A: Yes.

(Sharp Dep. at 108.) This testimony is uncontroverted evidence that Defendants Brierton and Share violated paragraph 3(d)(i) of their Agreements.

### IV. CONCLUSION

Because the covenant not to compete is enforceable and there is uncontroverted evidence of breach, "Plaintiff's Motion for Partial Summary Judgment and Brief in Support" (Dkt. 28) is **GRANTED**.

**IT IS SO ORDERED.**

    **SIGNED this the 6th day of March, 2010.**

                                                      _____
                                                    RICHARD A. SCHELL
                                                    UNITED STATES DISTRICT JUDGE